**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-01104-001-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Petra Rubi Maldonado-Gaytan, | |
| Defendant. | |

After a magistrate judge released defendant Petra Maldonado-Gaytan under the Bail Reform Act ("BRA") in this criminal case, immigration officials removed her from the United States. She now moves to dismiss the indictment with prejudice alleging the immigration removal jeopardized the district court's ability to try her and infringed her rights under the BRA, Speedy Trial Act, and Fifth and Sixth Amendments. (Doc. 24.) Because the magistrate judge crafted a release condition that ensured—if Maldonado-Gaytan abided by it—her removal was not involuntary and the court's ability to try her was not jeopardized, the motion to dismiss is denied.

## I.    Factual and Procedural History

In June 2024, a grand jury indicted Maldonado-Gaytan on drug and money laundering charges. (Doc. 3.)  She was arrested in November 2024. Because the government sought to detain Maldonado-Gaytan pending trial, Magistrate Judge Deborah M. Fine conducted a detention hearing a few days after the arrest. (Doc. 15.)

Maldonado-Gaytan is a citizen of Mexico, but she was brought to the United States

as a child and held DACA status for many years until she was not permitted to renew it. (Doc. 14 at 2.) Because she had no legal status in the United States by the time of the detention hearing, everyone recognized she might well be subject to an immigration detainer, that is, being taken into immigration custody and placed in removal proceedings if the court released her. (Doc. 28-1 at 6, 8, 10–12, 17.)[1] But consistent with Ninth Circuit case law, the magistrate judge recognized that she could not consider the detainer and potential for removal in determining flight risk under the BRA, and the government explicitly declined to ask that the judge do so (Doc. 28-1 at 8.) *See United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015). Instead, Judge Fine told the parties that if she decided to release Maldonado-Gaytan, she would impose a condition that accounted for the detainer. (Doc. 28-1 at 8.)

Defense counsel indicated Maldonado-Gaytan was already represented by an immigration attorney because she had applied for adjustment of status due to a U.S. citizen relative. (Doc. 28-1 at 10) Although defense counsel had not consulted with that attorney, he believed Maldonado-Gaytan would have some rights to a bond hearing in immigration proceedings. (Doc. 28-1 at 13). Defense counsel also planned to notify the immigration attorney "as soon as possible" if Maldonado-Gaytan was detained in immigration custody after the court released her. (Doc. 28-1 at 12.)

Judge Fine previewed the condition she was considering imposing, which included components requiring Maldonado-Gaytan to contest removal and decline voluntary departure, and to maintain weekly contact with her defense counsel and pretrial services even if deported. (Doc. 28-1 at 13–14.) Defense counsel reviewed the proposed condition with his client, did not object, and felt "the intent of the instruction [was] clear." (Doc. 28-1 at 14; *see also* Doc. 28-1 at 24 (Judge Fine explaining the condition required Maldonado-Gaytan to make "strenuous efforts fighting removal and deportation.").) The government also did not object. (Doc. 28-1 at 15.)

Judge Fine then found by a preponderance that Maldonado-Gaytan was a serious

---

[1] All pincite references are to the document's ECF header and not its internal pagination.

flight risk, but that conditions could reasonably assure her appearance at further court proceedings. (Doc. 28-1 at 18.) In making that release finding, Judge Fine explicitly "recognize[d] that [she could not] consider that she'll likely go into executive branch custody with immigration services," and did not "know what the result [would be] or have any control over the result of those proceedings." (Doc. 28-1 at 18.) She imposed conditions requiring:

> You shall not agree to voluntary departure from the United States and shall contest removal/deportation from the United States, including appealing at all levels all removal/deportation orders; and if deported or removed, . . . take every lawful action to facilitate lawful entry into the United States for further court proceedings.

> Even if deported, you must still contact counsel and pretrial services weekly by telephone and provide a good telephone number at which you can be reached.

(Doc. 28-1 at 23; *see also* Doc. 16 at 2.)

Judge Fine elsewhere observed "These release conditions won't go into effect until and unless she is released from the immigration detainer or released from immigration custody." (Doc. 28-1 at 19.) She explained what that meant to Maldonado-Gaytan:

> So, ma'am, we don't know whether you're actually going to go into immigration custody. I suspect you will, based on all the information that we have, which is limited. And if you are released from that custody, whether it's in the United States or after removal to Mexico, you must follow these release conditions.

(Doc. 28-1 at 19.) Specifically as to maintaining contact with her lawyer and pretrial services after potential removal, Judge Fine explained, "if you go into immigration custody and then you get out of that, whether it's in the United States or in Mexico, you need to contact your lawyer right away. . . . You need to contact pretrial services right away. Same if that's within the United States." (Doc. 28-1 at 24.)

After Maldonado-Gaytan was released on conditions under Judge Fine's order, she was taken into immigration custody as everyone had suspected. But although she initially filed a bond request in her immigration case, she reversed course after the immigration

- 3 -

judge indicated he would give her extra time (which she would spend in custody) to gather

documents to support that request. (Doc. 28-2 at 2.) The following colloquy occurred:

> [Maldonado-Gaytan:] . . . I have a 2-year-old daughter that has never been away from me and, um, she's in a stable, un unstable place going back and forth from her dad and my mom. For that reason, I wanted to request voluntary release. I don't know if that's possible at this time.

> [Immigration Judge:] Voluntary release into the United States?

> [Maldonado-Gaytan:] No, into my home country.

> . . .

> [Immigration Judge:] . . . So you'll be back in court on January 6th . . . . If you want to request voluntary departure, you can do that at that time and I will entertain that, okay?

> [Maldonado-Gaytan:] Okay. Thank you, your Honor.

> [Immigration Judge:] Alright. . . . Oh, wait, miss, . . . one more. Do you withdraw your bond request then?

> [Maldonado-Gaytan:] Yes, your Honor. Alright. Alright.

> [Immigration Judge:] So the court will enter an order, withdrawing that.

(Doc. 28-2 at 3.)[2] The immigration judge's January 6 removal order noted Maldonado-

Gaytan had waived appeal. (Doc. 28-3 at 3.) She was removed to Mexico through Nogales

on January 8, 2025. (Doc. 28-4 at 3.)

As of February 13, 2025, Maldonado-Gaytan had not contacted pretrial services.

(Doc. 28-5 at 2.) It is not clear whether she has maintained contact with defense counsel.

## II.     Analysis

A district court may dismiss an indictment under its supervisory powers "when the

investigatory or prosecutorial process has violated a federal constitutional or statutory right

and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d

---

[2] The transcript identifies the immigration judge and Maldonado-Gaytan only as "Speaker 1" and "Speaker 2" and one time appears to attribute one of Maldonado-Gaytan's answers to Speaker 1, the immigration judge. The identities of the speakers are clear from the content of their remarks.

1089, 1092 (9th Cir. 1991). The purposes of exercising supervisory authority in these circumstances are to implement a remedy for executive violations of recognized rights, to preserve judicial integrity, and to deter illegal conduct. *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 918 (D. Ariz. 2020) (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)). But the court only has authority to serve those purposes when the executive violates a known constitutional or statutory right. *See Barrera-Moreno*, 951 F.2d at 1092 ("Courts do not have the authority to supervise out-of-court executive procedure in the absence of a constitutional or statutory violation.").

In 2015, the Ninth Circuit issued an opinion limiting the way lower courts may consider immigration detainers during detention proceedings. *See generally Santos-Flores*, 794 F.3d 1088. After *Santos-Flores*, district courts may not consider the possibility of a defendant's detention or removal by immigration authorities in making an individualized detention determination because the BRA requires flight risk to "involve an element of volition." *Id.* at 1091; *see also id.* at 1093 (relevant question is whether defendant poses a "voluntary flight risk"). And if the government "jeopardizes the district court's ability to try" a criminal defendant by placing him "in immigration detention or removing him," the district court may "craft an appropriate remedy." *Id.* at 1092.

After *Santos-Flores*, several judges in this district have read that opinion to authorize dismissal of criminal cases based on a tension they perceive between the BRA and the Immigration and Nationality Act ("INA"), which in certain circumstances seems to require detention pending removal. *See, e.g.*, *United States v. Lutz*, No. CR-19-00692-001-TUC-RM (BGM), 2019 WL 5892827, at *3–*4 (D. Ariz. Nov. 8, 2019); *United States v. Castro-Guzman*, No. CR-19-2992-TUC-CKJ (LCK), 2020 WL 3130395, at *3 (D. Ariz. May 11, 2020) (collecting cases); *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 920 (D. Ariz. 2020). In these cases, courts typically found the removal infringed a defendant's rights under the Speedy Trial Act and constitutional right to counsel. *Munoz-Garcia*, 455 F. Supp. 3d at 920.

In contrast, several circuit courts have held there is no inherent conflict between the

BRA and INA. *See Castro-Guzman*, 2020 WL 3130395, at *3 (collecting circuit court cases); *United States v. Ventura*, 96 F.4th 496, 501 (2d Cir. 2024) ("ICE's detention of a criminal defendant ordered released under the BRA is lawful per se."). And another Arizona district judge declined to dismiss where a magistrate judge had imposed a detention condition similar to the one here because it ensured the court's ability to try the defendant was not jeopardized. *See United States v. Velasquez*, No. CR-16-624-PHX-JJT, Doc. 40 at 3–6 (D. Ariz. Aug. 19, 2016); *cf. United States v. Sixto*, No. CR-23-01240-001-PHX-DWL, 2023 WL 7282360, at *2 (D. Ariz. Nov. 3, 2023) (declining to issue injunction against immigration detention, joining "unbroken line of courts" concluding a defendant released under the BRA may still be detained under the INA).

This court need not decide whether the BRA and IRA are in tension because Judge Fine's conditions harmonized the two statutes by ensuring Maldonado-Gaytan's rapid removal was volitional here and, if she followed the conditions, the court's ability to try her was not jeopardized.

First, as to volition. Particularly because Maldonado-Gaytan's counsel had indicated bond might be available to her during the immigration proceedings (Doc. 28-1 at 13) and contesting removal would normally slow down those proceedings, the condition requiring Maldonado-Gaytan to refuse voluntary departure and contest removal at all levels could have eliminated any potential tension between the BRA and INA. And indeed, when Maldonado-Gaytan initially filed a request for bond, the immigration judge explained that it might be available but she would need to gather additional paperwork. (Doc. 28-2 at 2.) In this unusual situation—where Maldonado-Gaytan abruptly reversed course, withdrawing her request for bond and instead requesting voluntary departure based on her daughter's needs (Doc. 28-2 at 2-3)—she did not lack control over her removal. *Cf. United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. 2015) ("It is undisputed that Defendant's unavailability to face the charges against him is not due to his own volition but the Executive Branch's decision to deport him."). It is when the flight risk is entirely *involuntary*, unlike here, where other Arizona judges have held *Santos-Flores*, the potential

tension between the BRA and INA, and the Sixth Amendment is implicated. *See Castro-Guzman*, 2020 WL 3130395, at *5 (finding defendant unavailable for trial "through no fault of his own"); *Munoz-Garcia*, 455 F. Supp. 3d at 921 ("counsel's inability to assist with Defendant's defense is [a] result of the Government's decision to remove Defendant following the Magistrate Judge's release order, rather than of Defendant's own volitional act"). Maldonado-Gaytan's detention during immigration proceedings and eventual removal were at least partially voluntary in this case, because she chose voluntary departure over attempting to qualify for bond.

Second, Judge Fine's release condition ensured that even if she was deported, the district court's ability to try Maldonado-Gaytan was not jeopardized. The release condition provided that even if deported, Maldonado-Gaytan was required to take every lawful action to facilitate her lawful entry into the United States for further court proceedings and contact her defense attorney and pretrial services weekly. (Doc. 16 at 2.) Judge Fine repeatedly explained that meant Maldonado-Gaytan had to maintain those weekly contacts whether or not she was removed and whether she was in Mexico or the United States. (Doc. 28-1 at 19, 24.) This language, combined with Arizona's proximity to the Mexico border (which reduces logistical difficulties in returning for trial), led another district judge to conclude even an involuntary deportation did not jeopardize the district court's ability to try the defendant. *See Velasquez*, No. CR-16-624-PHX-JJT, Doc. 40 at 5–6. This court agrees.

Ultimately, it is a defendant's burden to show a violation of the BRA, Speedy Trial Act, or Sixth Amendment creates prejudice meriting dismissal. *United States v. Medina*, 524 F.3d 974, 980 (9th Cir. 2008) (Speedy Trial Act); *Resendiz-Guevara*, 145 F. Supp. 3d at 1139 (Fifth and Sixth Amendments); *see also Ventura*, 96 F.4th at 501 (defendant bears burden of showing immigration detention is pretextual after release under BRA). Maldonado-Gaytan has not met that burden here in light of her release conditions, especially where defense counsel has provided no information suggesting whether she has or has not maintained contact with him. Her motion to dismiss is therefore denied.

### III.    Conclusion

The denial of Maldonado-Gaytan's motion to dismiss leaves open the question of where the case goes from here. It appears that in failing to maintain contact with pretrial services even after her deportation Maldonado-Gaytan may have violated her release conditions, which could justify issuing a warrant.[3] It is also possible defense counsel may be maintaining contact with Maldonado-Gaytan such that the government could be ordered to make legal provisions for her return to stand trial, such as parole. *See United States v. Perez-Canez*, No. CR-18-29-PHX-JJT, 2020 WL 1000029, at *2 (D. Ariz. Mar. 2, 2020). The parties are ordered to confer regarding appropriate next steps. Within fourteen days of the date of this order, the government must file an appropriate pleading of no more than seven pages (for example, a motion to revoke pretrial release) reflecting its position. Maldonado-Gaytan must respond to that pleading within fourteen days, again in no more than seven pages. If the parties agree on next steps, they may instead move the court for appropriate relief in a joint pleading of no more than seven pages within fourteen days.

Accordingly,

**IT IS ORDERED** denying Maldonado-Gaytan's motion to dismiss indictment with prejudice (Doc. 24).

**IT IS FURTHER ORDERED** the parties must confer regarding next steps and file a pleading as outlined above on or before **May 14, 2025**.

Dated this 30th day of April, 2025.

**Honorable Krissa M. Lanham**
**United States District Judge**

---

[3] It is less clear whether she violated the release condition requiring her to vigorously contest deportation given Judge Fine's statement that the conditions would not go into effect until Maldonado-Gaytan was released from immigration custody. (Doc. 28-1 at 19.)